UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| QUINTA SANDERS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:18-cv-00269-ACL |
| v. | ) |
| | ) |
| Mississippi County, Missouri, et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

**I.    Summary**

On May 5, 2017, Tory Sanders was on a protective hold when he was killed after an altercation with ten jailers and police officers inside of Holding Room 120 at the Mississippi County Detention Center ("MCDC"). Defendants Mississippi County and Cory Hutcheson intentionally erased footage from the only surveillance camera that would have captured the events that led to Mr. Sanders' death, resulting in prejudice to Plaintiff. Defendants are guilty of intentional spoliation and their pleadings should be stricken.

**II.   Statement of Facts**

On May 5, Mr. Sanders was being held in protective custody awaiting a court adjudication to determine if he should be placed under a 96-hour civil commitment. Mr. Sanders had not committed a crime and was not under arrest. Mr. Sanders arrived at the MCDC at 10:15 a.m. and was placed in Holding Room 120.  There was not a surveillance camera inside this holding room, but there were cameras located in the hallway. Camera 1 was the closest camera to the holding room and is the only camera that would have captured the holding room's door and part of its interior and, thus it was the only camera

1

that would have caught the events leading up to Mr. Sanders' death and possibly the events directly causing his death. The undersigned counsel received footage from Camera 1 in a different lawsuit and the photograph below depicts the view of Camera 1:



Holding Room 120

The MCDC has roughly 45 cameras with all of the surveillance footage stored on three separate digital video records (DVRs). The three DVRs were located in the control room. Anyone in the control room could view the surveillance footage, but the DVRs were password protected and only Sheriff Hutcheson could make administrative changes and download videos. Individualized footage could not be deleted from a DVR. In order to delete any footage, the entire hard drive would have to be erased.

After a protracted period of time, the Missouri Highway Patrol Division of Drug and Crime Control ("DDCC") was contacted to investigate Mr. Sanders' death and arrived at MCDC at 10:43 p.m. on May 5. Missouri Highway Patrol Trooper Foster requested all video surveillance footage from the hallway cameras, which included Camera 1. In response, Sheriff Hutcheson provided a USB flash drive. Unbeknownst to the DDCC, this

flash drive only contained two hours of footage from two cameras and no footage from Camera 1. At 1:05 a.m. on May 6, Corporal McDaniel requested all footage from the time Mr. Sanders arrived at the jail until the time he was transported from the jail. Sheriff Hutcheson stated that he would provide that footage two days later on Monday, May 8.

Sheriff Hutcheson was removed from office on May 9 and did not return to the jail after that time. Also, on May 9, Deputy Caid provided Corporal McDaniel with another copy of the surveillance footage. This footage started from time Mr. Sanders entered the jail until 11:00 p.m. on May 5, but was only for Camera 5, the booking camera, and the parking lot camera. It did not include any footage from Camera 1. Finally, on May 18, Corporal McDaniel seized the three DVRs which were supposed to contain footage from all the MCDC surveillance cameras, as evidence. However, a forensic inspection confirmed that footage prior to May 7 was not "available for extraction" and the third DVR had an inaccurate time stamp and could not be read.

## III.    Legal Standard

"Spoliation" is the destruction or significant alteration of evidence. In order for relief for spoliation to be awarded, a district court is required to make two findings: "(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015).; *see also Hallmark v. Murley,* 703 F.3d 456, 460 (8th Cir. 2013). Importantly, "[i]ntent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other

factors." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007); *see also Morris v. Union Pac. R.R.,* 373 F.3d 896, 902 (8th Cir.2004).

To find prejudice, the despoiled evidence must have been both relevant and must not be available to the moving party through other sources. *Koons v. Aventis Pharm., Inc.,* 367 F.3d 768, 780 (8th Cir.2004) (no prejudice where there is no evidence that the lost document contained anything that would have affected the course of litigation); *Gallagher,* 619 F.3d at 844 (8th Cir.2010) ("In evaluating prejudice, we have looked to whether an allegedly harmed party took other available means to obtain the requested information."). *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012)(unreported).

Federal law governs the imposition of sanctions for spoliation of evidence. *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). District courts have discretionary power to fashion an appropriate sanction for conduct that abuses the judicial process. *Taylor v. Null*, 2019 WL 4673426, at *4 (E.D. Mo. 2019)(slip copy). Sanctions against an offending party for spoliation include entry of default judgment, an adverse inference jury instruction, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction. *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012)(unreported); *see also Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 2011 WL 5006220 (E.D.Mo.2011).

In evaluating what sanctions are available to remedy spoliation, the Court looks at the culpability of the offending party and the timing of the actions that caused the evidence to become unavailable. *Stevenson v. Union Pacific R.R.,* 354 F.3d 739, 748 (8th Cir.

2004). An explicit finding of bad faith is required to impose sanctions for: (1) spoliation that occurred prior to commencement of litigation; (2) to impose a dispositive sanction such as default or dismissal; and (3) to impose attorneys' fees. *See Process Controls Int'l, Inc.,* 2011 WL 5006220 *8 (citing *Stevenson,* 354 F.3d at 745); *Menz. v. New Holland N. Am., Inc.,* 440 F.3d 1002, 1006 (8th Cir.2006)). After litigation has commenced, however, the Eighth Circuit has upheld the imposition of an adverse inference instruction or the exclusion of evidence where the offending party "knew or should have known" destruction of the evidence was improper. *Process Controls Int'l, Inc.,* 2011 WL 5006220 *8; *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 266 (8th Cir.1993). *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.,* 2012 WL 2992627, at *4 (E.D. Mo. July 20, 2012)

In choosing between the available sanctions, the Court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir.1999). A sanction should be sufficient to remedy the prejudice caused to the moving party, *i.e.,* to restore "the lack of integrity in the case being presented to the jury." *Id.* It should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). "'Among the different sanctions, the Court may give a jury instruction on the 'spoliation inference,' an inference which permits the jury to assume that the destroyed evidence would have been unfavorable to the position of the offending party; enter judgment of default in favor of the prejudiced party; and/or impose the prejudiced party's attorney's fees on the offending party." *Ameriwood Industries, Inc. v. Liberman*, 2007 WL 5110313, at *4 (E.D. Mo. July 3, 2007)(not

5

reported). "The Court may strike pleadings or render default judgment against a party for spoliation of evidence when the party acted in bad faith by engaging in 'intentional destruction of evidence indicating a desire to suppress the truth' and the action prejudiced the party seeking the evidence at issue. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006-07 (8th Cir. 2006).

IV. **Argument**

From the outset, Defendants Mississippi County and Sheriff Hutcheson attempted to impede the investigation into Mr. Sanders' death. After failing to keep the investigation "in-house", Defendants took steps to prevent the release of any footage that would have showed the events leading up to Mr. Sanders' death and possibly the actions that caused Mr. Sanders' death, before intentionally deleting all footage from that day. Over a four-day period, Mississippi County provided the DDCC with two separate "sets" of footage– yet, neither set contained any footage from Camera 1. A forensic evaluation of two DVRs showed that all footage prior to May 7 was no longer available and footage from the third DVR could not be read.

**A. Intentional destruction indicating a desire to suppress the truth**

Pursuant to Mo.Rev.Stat. § 221.020, "the sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and of all the prisoners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible." Sheriff Hutcheson had unfettered access to the DVRs from immediately after Mr. Sanders' body was removed on May 5, until his removal from office on May 9. He watched the footage from Camera 1 on the night of May 5. Sheriff Hutcheson was the only person who could make administrative changes and download footage. There was

6

no way to delete portions of the footage from the DVR without deleting the entire hard drive. A forensic evaluation completed months later shows that surveillance footage prior to May 7 was not available for extraction from two of the DVRs and the information from the third DVR could not be accessed. Finally, Sheriff Hutcheson admitted that despite being requested twice by DDCC, he does not remember if he ever actually downloaded footage from Camera 1.

It is clear that surveillance for Camera 1 existed at the time they were first requested by DDCC. However, even if a formal request had not been made, Sheriff Hutcheson believed that Mississippi County may have had a written policy to automatically retain surveillance when there is a death or injury in the jail. In any event, Sheriff Hutcheson recognized that is only "logical" that a jail would automatically retain such evidence. It is irrelevant whether a request to preserve the evidence was made by Mr. Sanders' family, because the ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating the desire to suppress the truth, not the prospect of litigation. *Morris v. Union Pac. R.R.*, 737 F.3d 896, 902 (8th Cir. 2004). It is undisputed that Mississippi County had control over the destroyed evidence. Mississippi County knew that the surveillance camera was working that day, knew that the alleged unlawful actions took place in that area, and knew that Camera 1 captured that area. The footage was intentionally destroyed.

The Eighth Circuit recognizes that "[i]ntent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines*, 485 F.3d at 1035 (8th Cir. 2007). Here, Mississippi

County first attempted to impede outside investigations. When that was not successful, it then provided two sets of surveillance footage, yet neither set had footage from the only camera that would have showed the unlawful events. Sheriff Hutcheson admits that he does not remember if he ever actually downloaded the footage from Camera 1, despite being requested. Then, when DDCC obtained to the actual source of the information, the DVRs, it discovers that on two DVRs no data was available for extraction before May 7 and no data could be read on the other DVR. The timing of the destruction is also devious. The spoliation occurred within 13 days of Mr. Sanders' death and while there were two specific requests for the information. There were also two fake attempts to placate in the investigators when Mississippi County provided two sets of surveillance which were both missing the important surveillance footage.

     Defendants Mississippi County and Hutcheson had strong motives to delete the footage as it is the only footage that would show the inside of the holding room and the actions that occurred at the holding room door. It would have proven that Mississippi County never attempted to open the door. Further, the altercation took place in very small area it is likely that some Mr. Sanders' head and/or neck would have been visible on camera while he was laying on the ground. This is vitally important because there are allegations that Mr. Sanders' neck was depressed and that caused his death.

     The case here provides an even stronger justification for sanctions than *Taylor v. Null* where the Court imposed sanctions for spoliation of evidence. 2019 WL 4673426, at *1 (E.D. Mo. September 25, 2019). In *Taylor v. Null*, the plaintiff brought an action under § 1983 asserting claims of excessive force against two jailers. 2019 WL 4673426, at *1. The plaintiff alleged that he was subject to excessive force in three areas of the jail and

requested preservation of and access to those video records.  It is clear that those video records existed at the time that the plaintiff requested preservation of the same, but they were destroyed in accordance with a routine retention policy. *Id*. at *2-3. In awarding sanctions, the Court found that the defendants should have foreseen the possibility of future litigation and should have realized the importance of preserving the video. *Id.* at 6. The very day of the incident, the plaintiff filed a grievance in which he asked for the footage to be preserved and thereafter wrote letters to the Inspector General's Office regarding the incident and submitted multiple medical service requests in which he cited the incident. *Id*.  Intent is rarely provided by direct evidence. *Id*. at *6. The Court stated similar to *Stevenson*, the security footage was the only contemporaneous recording of the alleged incident and in this case the defendant was on notice of the inmate's grievance when it was destroyed. *Id*.

While intent is rarely proven with direct evident, here, there is strong evidence that the footage was purposefully deleted. The footage was there and requested on May 5. It was falsely represented that the footage was provide on May 5 and on May 9. In fact, the footage was deleted on May 7.

**B. Prejudice to the opposing party**

Here, Plaintiff has suffered prejudice. The video footage was have proven her false imprisonment claim, as well as her excessive force claim. The footage would have showed if the door was ever opened and it likely would have showed Mr. Sanders' head and neck area, which is important because there are allegations that Defendant Hutcheson put his knee on Mr. Sanders' neck which led to his death.

9

In *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 784 (8th Cir. 2004), the court stated that "[w]hile there is no indication that the voice tape destroyed contained evidence that could be classified as a smoking-gun, the very fact that it is the only recording of conversations between the engineer and dispatch contemporaneous with the accident renders its loss prejudicial to the plaintiffs." The fact that the plaintiff cannot show exactly what information was destroyed is precisely the problem.  *See Ameriwood*, at *7. The video could be dispositive on Plaintiff's excessive force claim.

In *Taylor v. Null*, the Court stated "the lost footage would likely have been dispositve regarding the allegations in his claim. 2019 WL 4673426 at *6. The video recorded the very events that Plaintiff claims constituted excessive force. The importance of the video footage is not lessened, nor can its loss be compensated for, by the fact that the plaintiff and the defendants can testify about the events at trial." *Id*. The fact that the plaintiff may be able to look elsewhere for the information is irrelevant. *See Am. Buildings & Contractors Supply Co., Inc.*, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012)(not reported). The Court noted that it could not ignore that the plaintiff was a convicted felon who would be testifying against uniformed corrections officers; while the video camera was an objective witness. *Taylor*, 2019 WL 4673426 at *6. "The obvious inherent value of the video recording is that it would have allowed the jury, the arbiter of facts, to see the actual events unfold and make its own collective assessment as to whether the force used . . . was or was not reasonable under the circumstances, or indeed, whether the alleged use of force occurred at all." *Id*. (citing *Peschel v. City of Missoula*, 664 F.Supp.2d 1137, 1145 (D. Mont. 2009).

As such, the footage from Camera 1 was inherently valuable and the Plaintiff has been prejudiced.

**C. Remedy**

Sanctions against an offending party for spoliation include entry of default judgment, an adverse inference jury instruction, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction. *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012)(unreported); *see also Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 2011 WL 5006220 (E.D.Mo.2011). In evaluating what sanctions are available to remedy spoliation, the Court looks at the culpability of the offending party and the timing of the actions that caused the evidence to become unavailable. *Stevenson,* 354 F.3d 739, 748 (8th Cir. 2004). Defendants Mississippi County and Hutcheson intentionally destroyed the only evidence that would have been dispositive on the false imprisonment claim and could have been dispositive on the excessive force claim. Under these circumstances, the appropriate remedy is striking these Defendants' pleadings.

**V.     Conclusion**

These facts establish the elements for the court to find spoliation. The intentionality of the conduct supports the harshest sanction available and the Defendants pleadings should be stricken.

Respectfully submitted,

WENDT LAW FIRM, P.C.

 /s/Jessica M. Agnelly
Samuel M. Wendt    MO#53573
Jessica M. Agnelly   MO#57663
4717 Grand Avenue, Suite 130
Kansas City, MO 64112
Phone: (816) 531-4415
Fax: (816) 531-2507
E-mail: jessica@wendtlaw.com

and

Michael G. Hoskins, *pro hac vice*
LAW OFFICE OF MICHAEL G. HOSKINS, P.C.
3200 West End Avenue, Suite 500
Nashville, TN 37203
Phone: (615) 783 - 1757
Fax: (615) 866 - 5816
Email: mgh@michaelghoskins.com
*ATTORNEYS FOR PLAINTIFF*
*QUINTA SANDERS*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 27th day of July 2020, the foregoing document was electronically filed with the Clerk of the Court. Additionally, a copy of said document was mailed electronically, the same date to:

D. Keith Henson
PAULE, CAMAZINE, & BLUMENTHAL, P.C.
165 N. Meramec Ave., Suite 110
Clayton (St. Louis), MO  63105-3772
Telephone: (314)-727-2266
Facsimile: (314)-727-2101
khenson@pcblawfirm.com
ATTORNEYS FOR DEFENDANTS CITY OF CHARLESTON, MISSOURI ROBERT HEARNES, CURTIS ARNOLD, ZACHARY MATNEY, AUSTIN HENSON

A.M.  Spradling, III
SPRADLING & SPRADLING
1838 Broadway, PO Drawer 1119
Cape Girardeau, MO  63702-1119
Telephone: 573-335-8296
Fax: 573-335-8525
spradlaw@spradlaw3.com
ATTORNEYS FOR DEFENDANTS MISSISSIPPI COUNTY, MISSOURI, SALLY YANEZ, RYAN HILL, JOE ROSS, JOSH MALDONADO, FAITH ALTAMIRANO, AND DECOTA MCGLOTHLIN

Robert T. Plunkert
Peter J. Dunne
PITZER SNODGRASS, P.C.
100 South Fourth Street, Suite 400
St. Louis, MO 63102-1821
314-421-5545
314-421-3411 (fax)
plunkert@pspclaw.com
dunne@pspclaw.com
ATTORNEYS FOR CORY HUTCHESON

                                              /s/Jessica M. Agnelly
                                              ATTORNEY FOR PLAINTIFF