UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| QUINTA SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:18-CV-269-ACL |
| | ) | |
| MISSISSIPPI COUNTY, MISSOURI, CORY | ) | |
| HUTCHESON, SALLY YANEZ, RYAN | ) | |
| HILL, JOE ROSS, JOSH MALDONADO, | ) | |
| DECOTA MCGLOTHLIN, and FAITH | ) | |
| ALTAMIRANO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion to Enforce Settlement Agreement (Doc. 90) filed by

the Mississippi County Defendants and Defendant Hutcheson, the former Mississippi County

Sheriff.   If enforced, the alleged settlement agreement would result in a payment of the

$2,000,000 policy limits by Mississippi County, Missouri's insurer, Missouri Public Entity Risk

Management Fund (MOPERM), to settle Plaintiff's claims against the Mississippi County

Defendants and Defendant Hutcheson.   Plaintiff opposes the Motion. (Doc. 96.)

### Procedural Background and Denial of Request for Evidentiary Hearing

On August 20, 2021, a phone conference was held with counsel for all parties except

counsel for the City of Charleston Defendants regarding the pending Motion.   During the

conference, there was discussion about the roles of the attorneys representing the Defendants and

the two insurance companies that hired the attorneys in this case.   At the conclusion of the

conference, the parties were given ten days to determine if they could reach a resolution without

the Court ruling on the pending Motion.

1

In response to the information about attorney representation, Plaintiff filed a Motion for Leave (Doc. 109) to File a Supplemental Memorandum (Doc. 109-1) in Opposition to the Mississippi County Defendants' Motion to Enforce Settlement Agreement.   Plaintiff claims that the Mississippi County Defendants' attorney "lacked authority to accept a settlement demand on behalf of Defendant Cory Hutcheson because [he] has repeatedly denied that he represents Defendant Hutcheson and has no authority to act on his behalf."   *Id*. at p. 1.

Defendant Hutcheson urges the Court to deny Plaintiff's request to supplement.   (Doc. 110.)   Alternatively, Defendant Hutcheson requests that if Plaintiff is granted leave to file the supplement that he be granted the opportunity to produce evidence consistent with his Memorandum of Law in Opposition.   *Id*. at p. 8.   More specifically, Defendant Hutcheson anticipates the need to submit exhibits for *in camera* review to show that the attorney hired by MOPERM had authority to act on behalf of MOPERM, the Mississippi County Defendants, and Defendant Hutcheson.   *Id*. at p. 5.

The Mississippi County Defendants join Defendant Hutcheson's Response.   (Doc. 112.)   Counsel for the Mississippi County Defendants also reviewed applicable case law; and explained that "[i]nitially MOPERM denied coverage to Cory Hutcheson, but thereafter after review of its interests, agreed to provide coverage under its policy to Mr. Hutcheson.   Neither Cory Hutcheson [n]or the other Mississippi County Defendants had any right to control the offer of settlement of the underlying case."   *Id*. at pp. 2-3.

The Eighth Circuit recognizes a general rule that "an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement."   *Stewart v. M.D.F., Inc*., 83 F.3d 247, 251 (8th Cir. 1996) (citation omitted).   That said, "[t]here is no automatic entitlement to an evidentiary hearing simply because [a] motion concerns a settlement

2

agreement." *Id*. (citing *Vaughn v. Sexton*, 975 F.2d 498, 505 (8th Cir. 1992) (district court's failure to hold an evidentiary hearing regarding settlement agreement was upheld)).

In *Stewart*, "the parties' counsel were the sole witnesses to their own conversations" and "counsels' representations to [the court] were made as officers of the court."  *Id*. at 252.   The *Stewart* panel affirmed the district court's refusal to hold an evidentiary hearing.

In this case, the parties' counsel provided the correspondence related to the settlement in question, along with their own interpretations of what the correspondence means.   Only the attorneys participated in the settlement discussion.   Except for Defendant Hutcheson's counsel's request for *in camera* review of documents related to attorney representation, there has not been a request for an evidentiary hearing.   In these circumstances, there is nothing to be gained from holding what would in essence be "a mini-trial to resolve a dispute between attorneys…" *Stewart*, 83 F.3d at 252.   Furthermore, between the pleadings and the exhibits submitted, there is sufficient evidence before the Court to address the question related to the authority of the MOPERM attorney to act on behalf of MOPERM, the Mississippi County Defendants, and Defendant Hutcheson.   Thus, the Motion will be considered without an evidentiary hearing.

Plaintiff's request to supplement her opposition to the Motion to Enforce will be granted and the Defendants' pleadings in opposition will also be considered.

## I.     **Defendants' Motion**

The Defendants claim that a valid settlement agreement was reached on April 26, 2021, when they met Plaintiff's settlement demand of $2,000,000 on behalf of the Mississippi County Defendants and Defendant Hutcheson.   Defendants have submitted email correspondence between counsel for Plaintiff and the attorneys for Defendants setting out the settlement negotiations and alleged agreement.   (Doc. 90-1, 90-2, 90-3, 90-4.)

3

Plaintiff responds that a settlement agreement was never reached, because "Plaintiff's counsel specifically conditioned Plaintiff's offer to settle with the Mississippi County Defendants for the MOPERM policy limits on the expressed exclusion of Defendant Hutcheson from the settlement."   (Doc. 96 at p. 11.)   Plaintiff contends there was not a "'mirror image' acceptance of the original offer," because the April 26, 2021 communication added a material term by including Defendant Hutcheson in the settlement.   *Id*.   Plaintiff further argues that the attorney for the Mississippi County Defendants was not competent to settle the matter on behalf of Defendant Hutcheson.

## I.A.   Findings of Fact

"[T]he proper discharge of judicial function in a case in which the parties to an agreement disagree as to its meaning and effect ordinarily requires something further than a mere examination and consideration of words employed in the written contract."   *Cure v. City of Jefferson*, 380 S.W.2d 305, 310 (Mo. banc 1964).   "The intent of contracting parties is an issue of fact,…"   *Sheng v. Starkey Laboratories, Inc*., 117 F.3d 1081, 1084 (8th Cir. 1997) (citing *City of Savage v. Formanek*, 459 N.W.2d 173, 175 (Minn. App. 1990) (applying clear error review to factual findings)).

To properly interpret the words of a contract, courts consider "the situation of the parties and the accompanying circumstances at the time it was entered into—not for purposes of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement."   *Cure*, 380 S.W.2d at 311.   *See also Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784–85 (8th Cir. 1984) (citations omitted)).

**Background**

Following the death of her son in Mississippi County, Missouri, Plaintiff Quinta Sanders (the natural mother of decedent, Tory Sanders) filed this action individually and on behalf of all members of the class one beneficiaries for wrongful death, including the decedent's wife and his nine minor children, for money damages related to the injuries and death of Tory Sanders. Plaintiff asserts both civil right claims under 42 U.S.C. § 1983, and Missouri state law claims.

The Defendants in this matter are represented by three separate attorneys.   An attorney hired by the City of Charleston's insurer, Saver's Property & Casualty Insurance Company (hereinafter Saver's), represents the **"City of Charleston Defendants."**   Mississippi County is listed as an additional insured on the Saver's policy.

A second group of Defendants are employed by Mississippi County, Missouri, including Sally Yanez; Ryan Hill; Joe Ross; Josh Maldonado; Decota McGlothlin; and Faith Altamirano along with the County itself.   MOPERM retained an attorney to represent these **"Mississippi County Defendants"** and not the former Mississippi County Sheriff, Cory Hutcheson.   At the outset of the litigation, MOPERM denied coverage for Defendant Hutcheson.   (Doc. 96 at p. 3.) The attorney for the Mississippi County Defendants (who was retained by MOPERM) explained, "[b]ecause there was a question of coverage for Cory Hutcheon, it was required that he have separate legal counsel as the counsel for the other Mississippi County Defendants could not represent him."   (Doc. 112 at p. 2.)

The former sheriff, **Defendant Cory Hutcheson**, is represented by another attorney who was hired by Saver's, under a Reservation of Rights.   (Doc. 96 at p. 3.)

The parties engaged in court ordered mediation on July 27, 2020, and they did not achieve a settlement.   (Doc. 58).   In early 2021, the Court was notified that Plaintiff reached a settlement

5

with the City of Charleston Defendants.   This Court approved that settlement, in the amount of $500,000 from the Saver's policy, on April 16, 2021.   (Doc. 85.)

### *March 24, 2021 Communications*

On March 24, 2021, Plaintiff's counsel sent an email to counsel for Defendant Hutcheson **and** counsel for the Mississippi County Defendants, addressing them as "Gentlemen."     (Doc. 90-1 at p. 1.)   Counsel for the City of Charleston Defendants was copied on the message.   The email opened with a reference to a recent Missouri Court of Appeals decision concerning whether MOPERM was subject to sovereign immunity from claims of bad faith failure to settle within policy limits and breach of fiduciary duty.   *Id.*   Plaintiff's counsel then wrote:

> Ms. Sanders is willing to give *your clients' insurer one final opportunity to settle* within its policy limits for $2,000,000.   This demand is unlimited in time but will not remain open in perpetuity.

*Id.*   (Emphasis added.)   Previously, the most MOPERM had offered to settle the case for the Mississippi County Defendants, *excluding Defendant Hutcheson*, was $650,000.

In response to the demand for the MOPERM policy limits to counsel for Defendant Hutcheson and the Mississippi County Defendants, an exchange took place between Defendant Hutcheson's counsel and Plaintiff's counsel:

**Hutcheson's Counsel:**   [Plaintiff's counsel], could you please clarify?   MOPERM has not accepted the defense or coverage in this matter regarding Cory Hutcheson, so **I cannot understand if this is a demand against the remaining defendants (MS County and Cory Hutcheson) combined for a total of $2M, or if the demand is something different**.   You also reference "insurer," and as you know from discovery, *there are separate insurers involved in this pertaining to MS County defendants and Cory Hutcheson*.

**Plaintiff's Counsel**:   I'm talking about **anyone insured by MOPERM**.   *If* they are denying coverage for Mr. Hutcheson, he *would be* excluded.

6

**Hutcheson's Counsel**:   I'm telling you that MOPERM has not accepted coverage (if they had, then I would provide you with the required document production pursuant to Rule 26).   So is there any demand you're making to Cory Hutcheson?

**Plaintiff's Counsel**:   I'm not sure why there's a disconnect.   ***If*** MOPERM is denying coverage for Cory, ***then*** he is excluded from the demand to MOPERM.

**Hutcheson's Counsel**:   Ok, I'm proceeding with the understanding you are not making a demand against Cory Hutcheson to settle any claims in this suit.

(Doc. 90-1, email chain edited to reflect messages in chronological order; emphasis added in bold and italics.)   The Mississippi County Defendants' attorney did not participate in the email exchange.   His interpretation of the exchange as described in the Motion and accompanying Memorandum (Docs. 90 and 91) is that Defendant Hutcheson would be included in the settlement offer *if* MOPERM extended coverage to him.

The ten-minute email exchange reflects that Defendant Hutcheson's counsel misunderstood Plaintiff's counsel's explanation of who *could be* included in the settlement offer. On March 24, 2021, everyone knew that MOPERM had not extended coverage to Cory Hutcheson. As Plaintiff's counsel acknowledges, "the insurers' coverage positions have remained the same for at least the last two and a half years, if not longer."   (Doc. 96 at p. 3.)

The fact MOPERM had not extended coverage to Defendant Hutcheson prior to March 24 gives greater meaning to Plaintiff's offer "to give [MOPERM] one final opportunity" to settle the matter for the policy limits on behalf of Defendant Hutcheson and the Mississippi County Defendants.   In essence, the email offer was MOPERM's <u>last chance</u> to reconsider coverage for Defendant Hutcheson and to settle within the policy limits.   If the position related to the denial of coverage was set in stone, there would have been no reason for Plaintiff's counsel to include Defendant Hutcheson's counsel in the offer to settle.

While Plaintiff's counsel now claims that the offer to settle "with the Mississippi County Defendants for the MOPERM policy limits" was "specifically conditioned. . .on the expressed exclusion of Defendant Hutcheson from the settlement," (Doc. 96 at p. 11) that is not supported by the fact the offer was sent to Defendant Hutcheson's counsel.   Additionally, Plaintiff's counsel's email responses to Defendant Hutcheson's counsel's questions reflect that Defendant Hutcheson would be included if MOPERM extended coverage to him.   As to whether the offer was for a total of $2,000,000 from the Mississippi County Defendants and Defendant Hutcheson combined, Plaintiff's counsel did not respond with something like "no, that's not the offer; Defendant Hutcheson is excluded."   Nor did Plaintiff's counsel limit the demand to the Mississippi County Defendants.   Rather, Plaintiff's counsel explained that the demand was for "anyone insured by MOPERM," adding that Hutcheson would only be excluded if MOPERM denied coverage.   This response was made after Defendant Hutcheson's counsel noted MOPERM's current position to not extend coverage to Defendant Hutcheson; a fact well known by all parties at that time.

During the email exchange, Hutcheson's counsel could not get past the fact that MOPERM had not extended coverage at that time.   As a result, he was uncertain whether Defendant Hutcheson was included in Plaintiff's offer, and asked "is there any demand you're making to Cory Hutcheson?"   Plaintiff's counsel did not understand why Hutcheson's counsel was not comprehending the offer.   He replied, "I'm not sure why there's a disconnect."   Rather than saying that Hutcheson was excluded from the offer based on MOPERM's current position, Plaintiff's counsel noted one last time that Hutcheson was excluded from the offer *if* MOPERM was not covering him.   If Defendant Hutcheson was not an intended recipient of the offer, Plaintiff's counsel should have stated that it was a mistake for Hutcheson's attorney to be

included in the message.   That he did not do.

Plaintiff's counsel's repeated remarks that *if* MOPERM was denying coverage *then* Hutcheson would be excluded, recognized that decisions related to coverage can be fluid.   His explanation that Hutcheson was only excluded if MOPERM continued to deny coverage induced Hutcheson's counsel to seek coverage for Hutcheson.   Although Hutcheson's counsel did not comprehend the intended message during the email conversation, afterwards, he engaged in efforts to not only persuade MOPERM to cover Hutcheson, but to meet Plaintiff's demand for the policy limits.

Hutcheson's counsel's initial misunderstanding of the offer represents a supposition of a party that does not "determine whether or not there is a contract and the terms of the contract." *See B-Mall Co.*, 977 S.W.2d at 78.   One attorney's momentary misunderstanding of what another attorney says does not change the terms of an offer.   While Hutcheson's attorney's misunderstanding distracts from the offer to settle, it does not change Plaintiff's counsel's objective manifestations relating to Plaintiff's willingness to settle this case with the remaining Defendants for the MOPERM policy limits.

If Plaintiff's counsel did not intend to extend the $2,000,000 settlement offer to Defendant Hutcheson, there was no reason to send the email to Hutcheson's counsel in the first place.

In consideration of the foregoing analysis of the March 24, 2021 email, the Court finds that Plaintiff's counsel's intent in addressing the email to the attorneys for both Defendant Hutcheson *and* the Mississippi County Defendants was to offer them an opportunity to fully settle the matter for the $2,000,000 MOPERM policy limit.   Defendant Hutcheson was not excluded from the settlement offer.

### *April 14, 2021 Minor Settlement Hearing (City of Charleston Defendants)*

A hearing to approve the minor settlement agreement between Plaintiff and the City of Charleston Defendants was held on April 14, 2021.   Counsel for all parties participated in the public proceeding.   The amount of the settlement, $500,000, was disclosed shortly before the hearing.   The funds were to be paid from the Saver's policy, which had a $2,000,000 policy limit. On April 16, 2021, this Court approved the settlement.   (Doc. 85.)

### *April 20, 2021 Communications*

On April 20, 2021, Plaintiff's counsel sent an email to the Mississippi County Defendants' counsel notifying him that Plaintiff would be *withdrawing the demand made on March 24, 2021* "*in the very near future,*" and invited a discussion regarding questions or concerns.   (Doc. 90-2 at p. 3; emphasis added.)   Counsel for Defendant Hutcheson was not included in this communication.

The Mississippi County Defendants' counsel responded that he was "in the process of trying for an offer of settlement" based on Plaintiff's demand for the policy limits.   *Id.* at p. 2. He stated that MOPERM's committee was meeting "at the end of April or 1st of May," and that he should "know something by May 15th."   *Id.*   Counsel then engaged in the following exchange:

| | |
|---|---|
| **Plaintiff's Counsel**: | I understand the committee is meeting on April 23rd at 10:00 AM.   I will expect a response thereafter. |
| **County's Counsel**: | I will be out of the state the 23rd to the 25th and may not have any information until then. |
| **Plaintiff's Counsel**: | I'm virtually certain they have telephones, internet, and email in whatever state you are going to. |

*Id.* at p. 1; email chain edited to reflect messages in chronological order.

### April 23, 2021 MOPERM Committee Meeting

During prior negotiations between the parties, the most that MOPERM had offered to settle the case on behalf of the Mississippi County Defendants, *excluding Defendant Hutcheson*, was $650,000.   Plaintiff's offer to settle the matter for the $2,000,000 policy limits gave MOPERM incentive to change its decision related to denying coverage for Defendant Hutcheson.

A meeting of the MOPERM Committee was held on April 23, 2021.   The Committee agreed to provide coverage for Defendant Hutcheson.   It also agreed to meet Plaintiff's $2,000,000 policy limit demand for all Mississippi County Defendants, including Cory Hutcheson. Counsel for the Mississippi County Defendants communicated with the Mississippi County Defendants and Defendant Hutcheson's counsel about the MOPERM Committee's decisions.   All the Defendants agreed to accept Plaintiff's March 24 offer to settle the case for $2,000,000.

### April 26, 2021 Communications

On April 26, 2021, when the March 24 offer to settle was still on the table, counsel for the Mississippi County Defendants sent a letter to Plaintiff's counsel via email.   (Doc. 90-3.)   The letter provides:

> Dear [Plaintiff's Counsel]:
>
> I have received authority from MOPERM and the Mississippi County Defendants, <u>*including Cory Hutcheson*</u> as a Mississippi County Defendant, to pay to the Plaintiffs' the MOPERM policy limits of $2,000,000.00 as **a full and final settlement of all of Plaintiffs' claims against the Mississippi County Defendants**, subject to the Court's approval of the wrongful death settlement.
>
> Through [Defendant Hutcheson's Counsel]'s efforts over the past several weeks, he was able to convince MOPERM that Cory Hutcheson should be covered under the Mississippi County policy with MOPERM.
>
> Please let me know as soon as possible if we are settled.   Dr. Deidiker's deposition is this Thursday and if we are settled, I need to cancel him as soon as possible.

*Id.* (italics and underlined emphasis in original, bolded emphasis added).

The April 26 letter expressed an acceptance of the March 24 offer to settle.   It also provided notice that MOPERM decided to cover Defendant Hutcheson under the policy.   At the conclusion of the letter, the Mississippi County Defendants' counsel queried whether the case was settled.   A month had passed since the email offer to settle and the parties were still engaged in discovery.   Confirmation of a settlement would be needed for the parties to discontinue discovery.   A deposition was scheduled with one of the doctors three days later.   To cancel the deposition, the Mississippi County Defendant's attorney needed to know whether Plaintiff's counsel agreed that MOPERM's agreement to pay the policy limits of $2,000,000 settled the case.

Plaintiff's counsel did not agree that the case was settled.   He responded that he would "present [the] counter-offer to Ms. Sanders and the other Class I beneficiaries and let you know their response."  (Doc. 90-4.)   Later that day, Plaintiff's counsel reported that Plaintiff rejected the counteroffer.   He explained that Plaintiff was willing to make a "global demand for settlement" with all remaining Defendants for the MOPERM policy limits ($2,000,000), plus the Saver's remaining policy limit ($1,500,000).

As the Mississippi County Defendants, including Defendant Hutcheson, believed a settlement had been reached when they accepted the offer contained in the March 24 email, they filed the instant Motion to Enforce.

**I.B.   Applicable Law**

A federal diversity court applies the forum state's law of contract interpretation to determine whether a settlement agreement was formed.  *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apts., L.C.*, 572 F.3d 511, 514 (8th Cir. 2009).   Here, the Court has jurisdiction over

Plaintiff's § 1983 claims because they are federal causes of action, and the Court has supplemental jurisdiction over Plaintiff's Missouri state claims.   "Settlement agreements are generally construed according to the principles of contract law."   *Myers v. Richland County,* 429 F.3d 740, 749 (8th Cir. 2005).   *See also Visiting Nurse Assoc., St. Louis v. VNAH Healthcare, Inc.*, 347 F.3d 1052, 1053 (8th Cir. 2003); *Sheng*, 117 F.3d at 1083; *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 756 (8th Cir. 1996).   Contract interpretation, in turn, is ordinarily a matter of state law.   *See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 474 (1989).   Thus, the Court will apply Missouri law to determine whether a settlement agreement exists.

   "[U]nder Missouri contract law…settlement agreements need not be in writing, and courts may enforce an oral agreement that contemplates a release being signed later."   *Black v. Sam's Club*, 267 Fed. Appx. 495, 496 (8th Cir. 2008).   "Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable."   *Sheng*, 117 F.3d at 1083 citing *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49 (Minn. Ct. App. 1992) (binding settlement existed when parties had agreed on payment of damages but failed to resolve the property owners' demand for additional drainage).   *See also Chaganti & Assoc., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (unless subject matter is governed by statute of frauds, court may enforce oral settlement agreement that contemplates execution of documents at later time; basic principles of contract law govern existence and enforcement of alleged settlement); *Cagle v. Poplar Bluff Tool & Die Co*., 2009 WL 877701, *2 (E.D.Mo. 2009) (unpublished) (collecting cases where valid settlement agreement found although additional negotiation was needed to sort out further details).

In Missouri, the existence of a contract is determined according to the "mirror-image rule," which demands a definite offer and a "mirror-image" acceptance.  *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995).   "An offer is made when the offer leads the offeree to reasonably believe that an offer has been made."  *Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.*, 770 S.W.2d 416, 419 (Mo. Ct. App. 1989).   An offer is defined under the Restatement as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Volker Court, LLC v. Santa Fe Apartments, LLC*, 130 S.W.3d 607, 611 (Mo. Ct. App. 2004) (citation omitted) (quoting Restatement (Second) of Contracts, 24 (1981)).

"The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement."  *Chaganti & Assoc.,* 470 F.3d at 1221.   "Mutuality of agreement requires a 'mutuality of assent by the parties to the terms of the contract.' *i.e*.; 'a meeting of the minds.'"  *Chaganti & Assoc.,* 470 F.3d at 1221 quoting *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. App. 1995).

The Eighth Circuit has noted that "despite its capacity to confuse," the phrase "'meeting of the minds,'. . .has proved difficult to eradicate from discussions of contract law."  *Visiting Nurse Assoc.*, 347 F.3d at 1054.   The Court explained:

> On its face, it can create the impression that a contract is formed only when the parties to it entertain the same subjective views as to its meaning.   That, however, is not the law.  *Cf. Skycom Corp. v. Telstar Corp*., 813 F.2d 810, 814-15 (7th Cir. 1987).   Rather, a court looks to the parties' objective manifestations as a reasonable person would.  *See McDaniel v. Park Place Care Ctr., Inc*., 918 S.W.2d 820, 827 (Mo. Ct. App. 1996).   If those manifestations produce a reasonably ascertainable objective meaning, an enforceable agreement exists.

*Id.*; *Stewart v. Prof'l Computer Ctrs, Inc*., 148 F.3d 937, 939 (8th Cir. 1998) (emphasis added).

"'A determination of whether an offer has been accepted depends upon what is actually said and done; it does not depend on the understanding or suppositions of one of the parties.'" *Grant v. Sears*, 379 S.W.3d 905, 917 (Mo. App. W.D. 2012) (citations omitted). *See also B-Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. App. W.D. 1998) ("It is the actions, and not the intentions or suppositions of the parties, that determine whether or not there is a contract and the terms of the contract."); *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. App. W.D. 2014) (same).

"'Under the objective theory of contracts applied in Missouri since 1892, the stress is on the outward manifestation of assent made to the other party….'" *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc*., 528 F.3d 556, 561 (8th Cir. 2008) (quoting *Don King Equip. Co. v. Double D Tractor Parts, Inc*., 115 S.W.3d 363, 369 (Mo. Ct. App. 2003)).   Missouri law requires that the court:

> determine the intention as manifested not by what the parties now say they intended but by the document. In that inquiry, however, the court is justified in considering more than the mere words of the contract.   The surrounding circumstances at the time of contracting and the positions and actions of the parties are relevant to the judicial interpretation of the contract…. The evidence considered by the court, however, may not be used to vary, contradict, enlarge, modify, or curtail the written terms of the agreement.

*Id.* at 784–85 (citations omitted).

"'Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed.'" *Bath Junkie*, 528 F.3d at 562 (quoting *Fiegener v. Freeman-Oak Hill Health Sys*., 996 S.W.2d 767, 773 (Mo. Ct. App. 1996)).   "Moreover, parties to a voluntary settlement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous." *Worthy v. McKesson Corp*., 756 F.2d 1370, 1373 (8th Cir. 1985) (per curiam) (citing *Trnka v. Elanco Products Co*., 709 F.2d 1223, 1227 (8th Cir. 1983)).   "[T]he fact that a party decides

15

after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Visiting Nurse Assoc.*, 347 F.3d at 1055, citing *Worthy*, 756 F.2d at 1373.   *See also Biologix Franchise Mktg. Corp. v. Logic*, Case No. 4:18CV00714 AGF, 2020 WL 33108, at *4 (E.D.Mo. Jan. 2, 2020) (same).

"An enforceable settlement requires the parties to reach agreement on the essential terms of the deal." *Sheng*, 117 F.3d at 1083 (citation omitted).   The party requesting enforcement of a settlement agreement has the burden of proving the existence of the agreement by "clear, convincing, and satisfactory evidence." *Id*.; *see also Kenner v. City of Richmond Heights, Mo*., 356 F. Supp. 2d 1002, 1008 (E.D. Mo. 2005).

## C.    Discussion

Defendants argue that the email correspondence between counsel shows that the essential elements of an enforceable contract have been met and that the parties have reached an enforceable settlement.   They explain that Plaintiff demanded $2,000,000 to settle Plaintiff's case against the Mississippi County Defendants, and the Mississippi County Defendants was defined to include all those who were insured under the MOPERM policy.   Defendants further argue that, once Cory Hutcheson was insured under the MOPERM policy, he was an included Mississippi County Defendant subject to Plaintiff's offer to settle for the MOPERM policy limits.   They also argue that the Mississippi County Defendants' attorney had the capacity to accept the settlement on behalf of Defendant Hutcheson.

Plaintiff argues that the exclusion of Defendant Hutcheson from the settlement offer was a material term upon which the agreement hinged.   Plaintiff's counsel contends that "Plaintiff's offer to settle with the Mississippi County Defendants for the MOPERM policy limits" was

"specifically conditioned. . .on the expressed exclusion of Defendant Hutcheson from the settlement."   (Doc. 96 at p. 11.)   Plaintiff further argues that the parties did not come to a "meeting of the minds," because the "last-minute inclusion of Defendant Hutcheson as a party to the settlement represented a counteroffer to Plaintiff's original demand."   (Doc. 96 at p. 1.) Lastly, Plaintiff argues that the attorney for the Mississippi County Defendants did not have authority to settle the case on behalf of Defendant Hutcheson.

### C.1.    The Parties Reached a Valid Settlement Agreement

As previously stated, five essential elements must be shown for a valid settlement agreement to be found, including: (1) competency of the parties to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of obligation, and (5) mutuality of agreement." *Chaganti & Assoc.,* 470 F.3d at 1221.   Plaintiff challenges the first and fifth elements.

### C.1.a.  Competent Parties

The first element of a valid settlement agreement requires that the parties to the agreement are competent to contract.   The parties to the challenged agreement include Plaintiff, on behalf of all Class One beneficiaries; the Mississippi County Defendants; and Defendant Cory Hutcheson.   As has been well established, MOPERM denied coverage of Defendant Hutcheson from the filing of the lawsuit in 2018 until April 23, 2021.   Defendant Hutcheson was receiving a defense under a reservation of rights from Saver's as the attorney hired by MOPERM could not represent the Mississippi County Defendants *and* Defendant Hutcheson.

"Missouri law permits an insurer to defend its insured but reserve the right to later disclaim coverage" when proper notice is given to the insured.   *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.2d 64, 88 (Mo. App. W.D. 2005) (citation omitted).   When an

insurance company reserves the right to deny coverage under its policy, it has been noted that the insurance company:

> would be more or less zealous in its defense of the claim depending upon its evaluation of its exposure under the policy.   Nothing chills one's zeal for a defense so much as the belief that, even if he loses, it will cost him nothing.   There would in many instances be a conflict of interest on the insurance company's part, or a division of interest, with the insurance company being as much interested in establishing facts which would result in non-coverage as in establishing facts showing the insured's non-liability.   The defense would be encumbered by the overhanging issue of policy coverage.

*State ex rel. Mid-Century Ins. Co., Inc., v. McKelvey*, 666 S.W.2d 457, 459 (Mo. App. 1984).

The potential conflict described in *McKelvey* was present for Defendant Hutcheson and MOPERM in this matter.   That potential conflict is what precipitated the retention of separate counsel for Defendant Hutcheson by Saver's.

Additionally, under Missouri law, "defense counsel retained by an insurance company actually represent both insurer and insured."   *In re, Allstate Insurance Company*, 722 S.W.2d 947, 952 (Mo. banc 1987) (citing *Helm v. Inter-Ins. Exch.*, 192 S.W.2d 417[, 420] (Mo. banc 1946)).   The MOPERM policy instructs that when coverage applies for claims on causes of actions for a Member Agency, public officials, and employees, "MOPERM may make such investigation, negotiation or settlement of any claim or suit it deems expedient."   (Doc. 110-2 at p. 31, MOPERM Memorandum of Coverage, I.B.)   "When coverage is admitted and adequate the interests of the insurer and insured are congruent.   Both are interested in disposing of the case on the best possible terms.   Only the insurer's money is involved…"   *In re All State*, 722 S.W.2d at 952.

On April 23, 2021, MOPERM concluded that Defendant Hutcheson should be one of the Mississippi County Defendants covered under the MOPERM policy.   The attorney representing

18

the Mississippi County Defendants and MOPERM, as well as Defendant Hutcheson's counsel report that each Defendant accepted the demand from Plaintiff before the April 26, 2021 acceptance letter was sent to Plaintiff's counsel.

On the record before the Court, the attorney for MOPERM and the Mississippi County Defendants had authority to settle the case on Defendant Cory Hutcheson's behalf.   The Court finds that the parties to the settlement agreement were competent to contract.

### C.1.b.  Mutuality of Agreement

Next, the Court will determine whether there was "mutuality of agreement."   Plaintiff's offer to Defendant Hutcheson and the Mississippi County Defendants explained that she was "willing to give [MOPERM] one final opportunity to settle within its policy limits for $2,000,000."  (Doc. 90-1 at p. 1.)   Plaintiff asserts that the parties did not come to a "meeting of the minds," because the offer to settle "with the Mississippi County Defendants for the MOPERM policy limits" was "specifically conditioned. . .on the expressed exclusion of Defendant Hutcheson from the settlement." (Doc. 96 at p. 11.)

The issue of whether there was "mutuality of agreement" between the parties is partly resolved by the Court's factual finding that Plaintiff's offer to settle included Defendant Hutcheson.   The Court examined "the parties' objective manifestations of intent and interpret[ed] those manifestations as a reasonable person would."  *Id.* at 1054.   That examination resulted in a finding that the manifestations of the attorneys involved "produced a reasonably ascertainable objective meaning."   The offer provided that if MOPERM extended coverage to Defendant Hutcheson, the Plaintiff agreed to accept the $2,000,000 policy limits to settle the case for all remaining defendants.

19

Following MOPERM's agreement to extend coverage to Defendant Hutcheson and pay the policy limit, Plaintiff nearly doubled her demand by adding the $1,500,000 remaining balance from the Saver's policy in a counteroffer.   If Plaintiff had truly intended to exclude Defendant Hutcheson from the March 24 offer, Defendant Hutcheson's counsel's comment about the additional Saver's policy gave Plaintiff's counsel the opportunity to say that inclusion of Defendant Hutcheson would require an amount of money from the Saver's policy.   Plaintiff's counsel did not say anything about the remaining balance on the Saver's policy, thereby under-scoring the fact that the offer to settle for the MOPERM $2,000,000 policy limit *included* Defendant Hutcheson.

While Plaintiff may have changed her mind about settling the case with Defendants as offered on March 24, "the fact that a party decides after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation."  *Visiting Nurse Assoc.*, 347 F.3d at 1055, citing *Worthy*, 756 F.2d at 1373. The addition of a demand from the Saver's policy was too late.   As noted above, during the March 24 email exchange, Defendant Hutcheon's counsel commented that the Saver's policy included additional coverage for all Defendants.   Although the existence of the policy was raised, Plaintiff's counsel did not reserve the ability to add a demand from the Saver's policy to settle the case.   If accepted, the March 24 offer to settle the case for the MOPERM policy limits would fully resolve the case.   Had Plaintiff intended to demand anything from the Saver's policy, that intent should have been stated in conjunction with the March 24 settlement offer.

The question that remains is whether Plaintiff's offer and the Defendants' acceptance meet the "mirror-image rule."  *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995). Comparing Plaintiff's March 24, 2021 offer to the April 26, 2021 letter reflects a "mirror-image

acceptance of the offer."   The March 24 email offer to <u>Defendant Hutcheson and the Mississippi</u>

<u>County Defendants</u> stated:

> Ms. Sanders is willing to give [MOPERM] **one final opportunity to settle** within its
> policy limits **for $2,000,000**.   This demand is unlimited in time but will not remain
> open in perpetuity.

(Doc. 90-1 at p. 1; emphasis added.)   Plaintiff's exact terms were accepted when the Mississippi

County Defendants' attorney announced:

> I have received authority from MOPERM and the Mississippi County Defendants,
> *including Cory Hutcheson* as a Mississippi County Defendant, to pay to the Plaintiffs' the
> MOPERM policy limits of **$2,000,000.00 as a full and final settlement** of all of Plaintiffs'
> claims against the Mississippi County Defendants,…

(Doc. 90-3; italics emphasis in original, bold emphasis added.)   The comparison of Plaintiff's

offer to settle and the Defendants' acceptance demonstrates that the "essential terms of the deal"

were met.

For the reasons set out above, Defendant Hutcheson and the Mississippi County

Defendants have demonstrated by clear, convincing, and satisfactory evidence that the parties

entered into a valid settlement agreement on April 26, 2021.   The Court will therefore order

enforcement of the agreement.

Accordingly,

**IT IS HEREBY ORDERED** that the Mississippi County Defendants' Motion to Enforce

Settlement Agreement (Doc. 90) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave (Doc. 109) to File a

Supplemental Memorandum (Doc. 109-1) in Opposition to the Mississippi County Defendants'

Motion to Enforce Settlement Agreement is **granted**.

   **IT IS FURTHER ORDERED** that not later than October 29, 2021, the parties meet and confer to mutually agree upon a schedule related to approval of the settlement agreement; and that the proposed schedule be submitted for the Court's review not later than November 15, 2021.

   **IT IS FURTHER ORDERED** that the trial setting is vacated, motions that remain pending (Docs. 94 and 99) are found moot, and all remaining pretrial filing deadlines are vacated.

   Dated this 1st day of October, 2021.

               s/*Abbie Crites-Leoni*
               ABBIE CRITES-LEONI
               UNITED STATES MAGISTRATE JUDGE